UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLIE COLEMAN,

                Plaintiff,

v.

UNKNOWN MORGAN et al.,

                Defendants.

_____/

Case No. 1:24-cv-1352

Honorable Maarten Vermaat

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's federal claims for failure to state a claim against Defendants Bartholomue, Riley, Spanzola, Vandenakker, HUM, and Jane Doe Nurse. The Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment and Fourteenth Amendment claims against the remaining Defendants.

Plaintiff's Eighth Amendment excessive force and supplemental state law claims against Defendants Morgan, Jones, EMT Officers, and Grier remain in the case.

The Court will also deny Plaintiff's motion for a preliminary injunction and temporary restraining order (ECF No. 7) and motions to appoint counsel (ECF Nos. 8 and 14).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

## Discussion

I.    **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following ICF staff in their individual capacities: Correctional Officers Unknown Morgan, Unknown Jones, Unknown Grier, Unknown Bartholomue, Unknown Spanzola, Unknown Riley, Unknown Vandenakker, and Unknown Members of the Emergency Move Team ("EMT Officers"); Unknown Health Unit Manager ("HUM"); and Unknown "Jane Doe Nurse." (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that, on November 2, 2024, Plaintiff was placed in Unit 1 segregation for a misconduct report of threatening behavior written by non-party Correctional Officer Kalenski (*Id.*) Upon his arrival to Unit 1, Plaintiff was placed in a secure shower module and Defendant Grier performed a successful strip search of Plaintiff. (*Id.*) Non-party Sergeant Higgins then reviewed Plaintiff's misconduct report for threatening behavior. (*Id.*) At the conclusion of the review, Plaintiff asked Sergeant Higgins if Plaintiff could "speak to his psych." (*Id.*) Sergeant Higgins responded, "There is no psych available right now. You can see one tomorrow. You don't feel like harming yourself or others do you?" (*Id.*) Plaintiff replied that he did not and could wait until the following day. (*Id.*, PageID.3.)

Moments later, Defendant Morgan and other unknown officers entered the shower module. (*Id.*) Defendant Morgan told Plaintiff that Defendant Grier had reported that Plaintiff threatened non-party Correctional Officer Kalenski a second time. (*Id.*) Plaintiff denied making any threats. (*Id.*) Defendant Morgan told Plaintiff that the Defendants would show Plaintiff why he should not threaten ICF staff and left the shower area. (*Id.*)

4

Several minutes later, Defendants Jones, Morgan, and EMT Officers returned in riot gear. (*Id.*) Defendant Morgan told Plaintiff to strip. (*Id.*) Plaintiff refused. (*Id.*) Defendant Morgan gave Plaintiff a "second direct order" to strip and wear a tear-resistant gown. (*Id.*) Shortly thereafter, Defendant Morgan sprayed Plaintiff with a chemical agent. (*Id.*) Defendant Morgan then gave Plaintiff a third direct order to wear the tear resistant gown. (*Id.*) Plaintiff said that he was not suicidal but complied with Defendant Morgan's third order. (*Id.*, PageID.3–4.) Though Plaintiff was not resisting, Defendants suddenly rushed Plaintiff from behind, pushed him to the floor, and punched Plaintiff while an officer cuffed Plaintiff's wrists and ankles. (*Id.*, PageID.4.) Defendant EMT Officers "dragged" Plaintiff to his segregation cell, where Defendant Morgan "smash[ed]" Plaintiff's hand inside the food slot. (*Id.*) Plaintiff requested medical attention but did not receive any medical care at that time. (*Id.*)

After Plaintiff was placed in the segregation cell, Defendants Riley, Bartholomue, and Spanzola each stopped at Plaintiff's cell while making their separate rounds. (*Id.*) Plaintiff asked each Defendant to remove the restraints and to provide Plaintiff with medical attention. (*Id.*) Defendants Riley, Bartholomue, and Spanzola refused Plaintiff's requests. (*Id.*)

Four hours after Plaintiff was placed in restraints, Defendants Jones and Morgan removed Plaintiff's restraints, made a joke about Plaintiff's exposed genitals, and "advised Plaintiff to stop threatening staff members." (*Id.*) Plaintiff asked Defendant Jones to contact healthcare for his swollen and bleeding hand and fingers, but Defendant Jones only told Plaintiff to "toughen up." (*Id.*) Defendant Morgan then issued Plaintiff a misconduct report for refusing to hand over the restraints. (*Id.*)

On or about November 5, 2024, Plaintiff submitted a medical kite to healthcare, requesting treatment for his hand and fingers. (*Id.*, PageID.7.) Plaintiff handed his kite to Defendant Jane Doe

Nurse during med pass; she declined to provide Plaintiff with medical care at that time but told Plaintiff that she would process his kite. (*Id.*)

On November 6, 2024, Plaintiff stopped a non-party nurse, who examined Plaintiff's hand on camera and determined that Plaintiff needed medical attention. (*Id.*) Plaintiff learned that Defendant Jane Doe Nurse had not processed Plaintiff's kite from the day before. (*Id.*) Plaintiff was advised to file a grievance and another kite, which he did. (*Id.*)

On November 8, 2024, Plaintiff submitted a third kite to Defendant HUM, requesting medical attention for his hand that was swollen and unable to close. (*Id.*) After Plaintiff filed a grievance against Defendants Jane Doe Nurse and HUM, Defendant HUM scheduled Plaintiff for an examination and x-ray. (*Id.*)

On November 10, 2024, Plaintiff appeared before Defendant Vandenakker for a hearing on the two misconducts issued by Defendant Morgan on November 2, 2024. (*Id.*, PageID.6.) Plaintiff presented his defense and Defendant Vandenakker promised a verdict. (*Id.*)

On November 11, 2024, Plaintiff received Defendant Vandenakker's report finding Plaintiff guilty of disobeying a direct order for refusing to wear a tear resistant gown, but not guilty of the misconduct premised upon Plaintiff's refusal to hand over restraints. (*Id.*) Plaintiff received 20 days' loss of privileges. (*Id.*)

On November 21, 2024, Plaintiff received a medical examination and x-ray where it was revealed that Plaintiff's left middle finger was swollen but that his hand and fingers were not fractured. (*Id.*) Plaintiff "was unsatisfied" with the x-ray results and sent a kite requesting an outside medical opinion. (*Id.*, PageID.8.) Plaintiff was scheduled to be examined by Defendant Jane Doe Nurse, a prerequisite to receiving an outside medical examination, but "grew paranoid"

and cancelled his appointment. (*Id.*) At the time that he filed his complaint, Plaintiff was awaiting

his rescheduled medical appointment. (*Id.*)

Plaintiff seeks declaratory, injunctive, and monetary relief. (ECF No. 1, PageID.11–14.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint

need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to

relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71

(6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of

prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff states that he brings claims for retaliation, excessive force, denial of medical care, violation of due process, deliberate indifference, and cruel and unusual punishment. (ECF No. 1, PageID.1.) Plaintiff also brings supplemental state law claims for assault and battery and negligence. (*Id.*)

### A.    Section 1983 Claims

### 1.    First Amendment Retaliation

Plaintiff alleges that Defendant Grier's actions "constituted retaliation" when Defendant Grier told the other Defendants that Plaintiff threatened Officer Kalenski. (ECF No. 1, PageID.9.) Plaintiff also alleges that Defendant Morgan "purposefully initiate[d] retaliation by stating we will show the plaintiff why he should not threaten his staff members . . ." (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Here, Plaintiff's retaliation claim fails as he has not alleged that he engaged in any protected activity.

It appears that Plaintiff alleges that both Defendant Grier and Defendant Morgan retaliated against Plaintiff because Plaintiff threatened Officer Kalenski or "staff." However, "[t]he First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). As the Sixth Circuit explained in *Thaddeus–X*, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis. *Thaddeus-X*, 175 F.3d at 394; *see Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that insolence is not protected conduct for First Amendment purposes). "Threatening Behavior" is a legitimate Class I misconduct violation under MDOC policy, MDOC Policy Directive 03.03.105, Attach. A (eff. Aug. 26, 2024), for which Plaintiff was ultimately found guilty, (ECF No. 1, PageID.6.) Any actions in threatening staff cannot be considered protected activity under the First Amendment—or any other amendment.

To the extent that Plaintiff also seeks to bring a retaliation claim premised upon his refusal to comply with Defendant Morgan's orders to strip and put on the tear resistant gown, his claim would likewise fail. "Disobeying a Direct Order" is a legitimate Class II misconduct violation. *See* MDOC Policy Directive 03.03.105, Attach. B. Though Plaintiff contends that the order was not valid under MDOC policy (ECF No. 1, PageID.3), Section 1983 does not provide redress for a violation of prison policies. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).

Plaintiff's allegations, taken as true, support the inference that Defendants used force against Plaintiff either because Plaintiff threatened MDOC staff or was perceived to have threatened MDOC staff, or because Plaintiff refused to comply with Defendant Morgan's orders to strip and put on the tear resistant gown. Because neither action is considered protected conduct under the First Amendment, the Court will dismiss Plaintiff's First Amendment claims and will

analyze Defendants' use of force under the Eighth Amendment. *See Ford v. Curtin*, No. 1:12-cv-367, 2012 WL 2089847, at *6 (W.D. Mich. June 8, 2012) (concluding that "[r]efusing to obey a 'valid and reasonable' order from a prison corrections officer violates MDOC [policy] and is, therefore, not protected conduct").

### 2.    Eighth Amendment Force-Related Claims

Plaintiff alleges that Defendants Morgan, Jones, Grier, and EMT Officers used excessive force against Plaintiff or caused excessive force to be used against Plaintiff. (ECF No. 1, PageID.8.) Specifically, he alleges that Defendant Grier falsely told Defendant Morgan that Plaintiff had threatened Officer Kalenski a second time, prompting Defendant Morgan and the EMT Officers to use a chemical agent against Plaintiff, push Plaintiff to the ground, punch Plaintiff's face and ribs, and "smash[]" Plaintiff's hand and fingers in the food slot. Plaintiff also faults Defendants Riley, Bartholomue, and Spanzola for failing to intervene in the continued use of force, leaving Plaintiff in wrist and ankle restraints when they each saw him at some point during the four hours that Plaintiff was restrained. (*Id.*, PageID.10.)

### a.    Defendants Grier, Morgan, Jones, and EMT Officers

As it relates to Plaintiff's claims of excessive force, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v.

10

*Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Taking Plaintiff's allegations as true, as is required at this stage of the proceedings, Plaintiff's Eighth Amendment against Defendants Grier, Morgan, Jones, and EMT Officers cannot be dismissed on screening.

### b.    Defendants Riley, Bartholomue, and Spanzola

Plaintiff alleges that Defendants Riley, Bartholomue, and Spanzola each saw Plaintiff in full restraints and refused to remove Plaintiff's restraints at some point during the four hours that Plaintiff remained restrained. An officer is liable for another officer's use of force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). "Although the improper use of restraints may violate the Eighth Amendment, physical restraints are constitutionally permissible where there is penological justification for their use." *Kennedy v. Doyle*, 37 F. App'x 755, 757 (6th Cir. 2002) (internal citations omitted).

Here, Plaintiff does not describe when each individual Defendant visited Plaintiff, what each individual Defendant knew about why Plaintiff was restrained, what each individual Defendant observed, or the state that Plaintiff was in at the time that he was observed by each individual Defendant. Plaintiff only describes that each Defendant observed that Plaintiff was restrained. Seeing that Plaintiff was restrained alone would not have placed Defendants Riley, Bartholomue, and Spanzola on notice that excessive force was being used and, therefore, cannot give rise to a failure to intervene claim.

Plaintiff also generally claims that Defendants were deliberately indifferent. To the extent that Plaintiff seeks to bring an Eighth Amendment claim against these Defendants for

unconstitutional conditions of confinement, his claim fares no better. The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to plead an Eighth Amendment conditions of confinement claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). Here too, the deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or

13

failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The use of restraints, even for an extended period, does not necessarily violate the Eighth Amendment. *See Hartsfield v. Vidor*, 199 F.3d 305, 309–10 (6th Cir. 1999) (finding that the placement in hard top-of-bed restraints for 18 hours was not cruel and unusual punishment, where testimony and documentation showed that plaintiff was allowed adequate toilet breaks and water). This is particularly true where the restraints are justified by a security concern. Therefore, the date and time that each individual Defendant visited Plaintiff and what each individual Defendant knew and/or observed matters. Plaintiff fails to provide the Court with facts that would suggest that each Defendant displayed deliberate indifference to a substantial risk of serious harm simply by seeing Plaintiff in restraints.

It is Plaintiff's obligation to provide the Court with sufficient facts to plausibly suggest that each individual Defendant violated Plaintiff's constitutional rights. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff has not met that minimal pleading burden. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Riley, Bartholomue, and Spanzola.

### 3.    Eighth Amendment Medical Care Claims

Plaintiff alleges that Defendants Morgan, EMT Officers, Riley, Bartholomue, Spanzola, and Jane Doe Nurse each denied Plaintiff medical care for Plaintiff's injured hands and fingers.

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle*, 429 U.S. at 104; *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock*, 273 F.3d at 702.

Like Plaintiff's other Eighth Amendment claims, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that

prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Here, the Court need not reach the subjective component as Plaintiff fails to allege facts that would indicate an objectively serious need for medical treatment.

To establish a sufficiently serious medical need, a plaintiff must point to a medical need "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (quoting *Blackmore*, 390 F.3d at 897). Plaintiff alleges that he suffered from a swollen left hand and that x-rays showed no signs of fracture. Superficial physical conditions, such as minor "cuts, bruising, and swelling," do not rise to the level of serious medical needs requiring medical treatment. *See Burgess*, 735 F.3d at 477. Bruising and swelling are conditions that might well resolve on their own. *See, e.g.*, *Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Accordingly, the Court will dismiss Plaintiff's Eighth Amendment medical care claim for failure to allege an objectively serious need for medical treatment.

### 4.    Fourteenth Amendment Due Process Claims

Plaintiff alleges that he was denied due process in connection with the misconduct charges for disobeying a direct order in refusing to wear a tear resistant gown and refusing to hand over restraints. He alleges that he was found guilty of refusing to wear a tear resistant gown, but that the charge premised upon Plaintiff's alleged refusal to hand over the restraints was dismissed without explanation. (ECF No. 1, PageID.6.) The Court will also liberally construe Plaintiff's complaint as bringing a Fourteenth Amendment claim regarding the grievance process. (*See id.*, PageID.6.)

### a.    Misconduct Charges

The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

As to Plaintiff's claim premised upon the misconduct charge of refusing to hand over the restraints, there is "no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No.

1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021); *see also Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (agreeing that an inmate's misconduct proceedings did not implicate a protected liberty interest because he was found not guilty); *Barlow v. Dominguez*, No. 98-2414, 1999 WL 1045174, at *1 (6th Cir. Nov. 9, 1999) (noting that the inmate's "due process rights were protected when, at an administrative hearing concerning the ticket, [the inmate] was found not guilty and the ticket was dismissed"). Because Plaintiff's allegations show that he had such an opportunity, and that ultimately, the false misconduct charges were dismissed, any intended procedural due process claims based upon those misconduct charges will be dismissed.

As to Plaintiff's claim premised upon the charge of disobeying a direct order for refusing to put on the tear resistant gown, to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). As noted above, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225 . Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

A prisoner's ability to challenge a prison misconduct conviction therefore depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 484, 487. Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a Class I misconduct is a "major"

misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id*. ¶ DDDD. Disobeying a Direct Order is a Class II misconduct, *see id.*, Attach B. Thus, it could not have affected the duration of Plaintiff's sentence.

Furthermore, Plaintiff does not allege any facts suggesting that the misconduct conviction resulted in an "atypical and significant hardship." *See Sandin*, 515 U.S. at 487. Plaintiff alleges that he received 20 days' loss of privileges because of his misconduct conviction. Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E. Where a stay longer than 30 days in segregation is not considered an atypical or significant hardship, *see Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010), it defies logic to suggest that the lesser penalty of loss of privileges for that duration could be atypical or significant. Sixth Circuit authority bears that out. *See Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004) (holding that a fourteen-day loss of privileges sanction did not implicate the due process clause); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (nine-month loss of package privileges did not impose an atypical and significant hardship); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *3 (6th Cir. Nov. 9, 2017) (concluding that "thirty days' loss of privileges . . . did not implicate a protected liberty interest"); *Langford v. Koskela*, No. 16-1435, 2017 WL 6803554, at *3 (6th Cir. Jan. 24, 2017) (thirty days' toplock and thirty days' loss of privileges "does not amount to an 'atypical and significant hardship'").

Plaintiff fails to allege any facts suggesting that he was subjected to conditions that would implicate a liberty interest because of the misconduct tickets. Plaintiff's Fourteenth Amendment procedural due process claims premised upon those tickets will, therefore, be dismissed.

### b.    Grievance Process

Plaintiff notes that he filed a grievance and appeal related to Defendant Vandenakker's "[judgment] bias act" and that "no avail" is still the result." (ECF No. 1, PageID.6.) The Court will liberally construe this allegation as a Fourteenth Amendment procedural due process challenge to the MDOC's grievance process.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, any interference with or failure of the grievance process did not deprive Plaintiff of due process.

Moreover, to the extent that Plaintiff intended to allege that his right to petition the government was violated by any interference with the grievance process, this right is not violated by a failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to

petition protects only the right to address government; the government may refuse to listen or respond). The denial of Plaintiff's grievances also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, any intended claims regarding Plaintiff's use of the grievance procedure will be dismissed for failure to state a claim

## B.    State Law Claims

When setting forth his claims, Plaintiff references state law claims of assault and battery and negligence. (ECF No. 1, PageID.1.) As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants Bartholomue, Riley, Spanzola, Vandenakker, HUM, and Jane Doe Nurse will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants. Because Plaintiff continues to have pending federal claims against Defendants Morgan, Jones, EMT Officers, and Grier, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## III.    Pending Motions

In addition to his complaint, Plaintiff has filed multiple motions: a motion titled "motion to order to show cause for preliminary injunction and temporary restraining order" (ECF No. 7), which the Court will construe as a motion for a preliminary injunction and temporary restraining order; and two motions to appoint counsel (ECF Nos. 8 and 14).

### A.    Motion for Preliminary Injunction and Temporary Restraining Order

In his motion for a preliminary injunction and temporary restraining order, Plaintiff asks this Court to order Plaintiff's immediate transfer and expunge Plaintiff's misconduct convictions. (ECF No. 7, PageID.30.) First, the Court's docket indicates that Plaintiff has since been transferred from ICF to AMF, rendering Plaintiff's request for transfer moot. Second, a request for injunctive relief generally becomes moot upon transfer to a new facility. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (holding that a prisoner-plaintiff's claims for injunctive and declaratory relief became moot when the prisoner was transferred from the prison about which he complained);

*Mowatt v. Brown*, No. 89-1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89-1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Plaintiff is no longer confined to ICF, where he avers that Defendants are employed and where the events are alleged to have occurred.

And third, as to Plaintiff's requests concerning his misconduct convictions, preliminary injunctions are "'one of the most drastic tools in the arsenal of judicial remedies.'" *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)). The issuance of preliminary injunctive relief is committed to the discretion of the district court. *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000). In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction. *Nader*, 230 F.3d at 834. These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers. *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same). "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

Moreover, where a prison inmate seeks an order enjoining state prison officials, the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984). The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, 585 U.S. 155, 158 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989). Plaintiff has not made such a showing, particularly where Plaintiff has no surviving § 1983 claims related to his misconduct convictions.

Second, the presence of irreparable harm is not evident. A plaintiff's harm from the denial of a preliminary injunction is irreparable only if it is not fully compensable by monetary damages. *See Overstreet*, 305 F.3d at 578; *see also D.T. et al. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326 (6th Cir. 2019) (holding that, absent a showing of irreparable harm, a preliminary injunction is not appropriate, regardless of the strength of the other factors). Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons

24

is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's request for preliminary injunctive relief will be denied.

### B.    Motions to Appoint Counsel

Plaintiff has requested a court-appointed attorney. (ECF Nos. 8 and 14.) He asserts that he is unable to afford counsel, the issues in this case are complex, and Plaintiff has no legal knowledge and limited access to the law library. (ECF No. 8, PageID.34; ECF No. 14, pageID.63.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will be denied.

### Conclusion

The Court will grant Plaintiff's motion to proceed *in forma pauperis* (ECF No. 2) but will deny Plaintiff's motion for a preliminary injunction and temporary restraining order (ECF No. 7) and Plaintiff's motions to appoint counsel (ECF Nos. 8 and 14).

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Bartholomue, Riley, Spanzola, Vandenakker, HUM, and Jane Doe Nurse will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Bartholomue, Riley, Spanzola, Vandenakker, HUM, and Jane Doe Nurse will be dismissed without prejudice to Plaintiff's ability to raise those claims in the state courts. The Court will also dismiss, for failure to state a claim, Plaintiff's First Amendment and Fourteenth Amendment claims against the remaining Defendants.

Plaintiff's Eighth Amendment excessive force and supplemental state law claims against Defendants Morgan, Jones, EMT Officers, and Grier remain in the case.

An order consistent with this opinion will be entered.


Dated:    May 12, 2025                                    /s/ *Maarten Vermaat*
                                                          Maarten Vermaat
                                                          United States Magistrate Judge